**No. 1**

## ALBANY OYER AND TERMINER.

### THE PEOPLE agt. CORNELIUS O'REILLY.

*Perjury — what constitutes the crime of — What is a valid oath.*

When a party appears before an officer duly authorized to administer oaths, and hands to such officer a declaration in writing, subscribed by him, in which declaration it is stated in substance that the party subscribing the statement verifies the same by his oath, with the intention thereby of having such officer understand that he, the party, does in fact declare to him, the officer, by written and printed words, that he verifies the same by his oath; and also with the intent to have the officer subscribe his certificate, that the statement has thus been verified, and the officer believing that the party intends to declare and does declare, on oath, by written and printed words, that he verifies the statement, affixes his name to the jurat; and then after such affixing delivers it to the party, who uses it for the purpose of inducing the official action of some body or court authorized to act thereon, then an oath has in fact been administered, although the words of the oath have not been audibly uttered.

Where O'Reilly, having a claim against the board of supervisors of Albany county for certain services, delivered the same and the required affidavit as to the correctness, etc., of the bill to K., a commissioner of deeds, to have the same certified by K., as sworn to before him, intending thereby to declare to said K. that by oath he intended to verify, and did verify the statement subscribed by him, and the officer regarding him as so declaring on oath, signs the certificate and the jurat for the purpose of evidencing the verification, and then delivers it to the party in that form verified, and the party presents it in that form and shape to the board of supervisors for the purpose of procuring the audit of the bill:

*Held*, that the oath had been duly and lawfully administered. No particular form is required for a valid administration of an oath.

The People agt. O'Reilly.

The affidavit required by section 63, page 881 of 1 Revised Statutes, (*6th edition*), to authorize the auditing of any account by a board of supervisors may be verified before a commissioner of deeds in and for said county.

Although there might have been legal objections to the audit and allowance of the prisoner's bill; yet, as before the bill could even be considered by the board of supervisors the law required it to be verified, the affidavit was material.

*February*, 1881.

*Before* Hon. T. R. WESTBROOK, *Justice Supreme Court* ; JAMES R. MAIN and WILLIAM J. REID, *Associates.*

MOTION in arrest of judgment.

*R. W. Peckham* and *M. D. Conway*, for prisoner.

*D. Cady Herrick*, district attorney, and *J. A. Delehanty*, assistant district attorney, for People.

WESTBROOK, *J.* — A motion is made in behalf of the prisoner, who was by the verdict of a jury rendered on Saturday last (February 26), convicted of the crime of perjury, to arrest the judgment. The crime was alleged to have been committed in verifying a bill presented to the board of supervisors of the county of Albany, in November, 1880, for his services as an undertaker in burying the bodies of several persons in his bill specified, and in preparing such bodies for interment. The several objections will be stated and considered in the order in which they were presented.

*First.* It is urged that the affidavit was not made before an officer authorized to administer an oath for such a purpose. It purports to be verified before Jeremiah Kieley, a commissioner of deeds in and for the city and county of Albany, and it is argued that it should have been made before the chairman of the board of supervisors.

This objection is founded upon section 63, page 881 of 1 Revised Statutes (*6th edition*). That section prevents the

auditing "by any board of town auditors, or supervisors or superintendent of the poor," of any account unless the same "shall be made out in items, and accompanied with an affidavit attached to and to be filed with such account, made by the person presenting or claiming the same, that the items of such account are correct, and that the disbursements and services charged therein have been in fact made or rendered, or necessary to be made and rendered at that session of the board, and stating that no part thereof has been paid or satisfied." The conclusion of that section is a separate sentence, and is as follows : " And the chairman of such board, or either of said superintendents, is hereby authorized to administer any oath required under this section."

We cannot regard the power conferred by the section upon the chairman of a board of supervisors as exclusive. The verification of the bill by an affidavit in a prescribed form is required, but it is not declared before whom such verification must be made. The power conferred by the closing sentence to administer oaths, is not bestowed in such language as to indicate any intention to repeal other statutory provisions. The sixty-first section (same page, .etc.) expressly provides : " The chairman of any committee appointed by a board of supervisors, is hereby authorized to administer any oath to any person presenting an account or claim before such committee to be audited, as to services rendered, and the correctness of such claim." By section 39, page 446, of volume 3 of Revised Statutes (*6th edition*), it is declared : "Whenever any oath or affidavit *is* or *may be* required or authorized by law, in any cause, *matter* or proceeding (except oaths to jurors and witnesses in the trial of a cause, oaths of office, and such other oaths as are required by law, to be taken before particular officers), the same may be taken before any judge of any court of record, any * * * commissioner of deeds," etc. Such plain and explicit provisions as these cannot be repealed by the conferring of authority to take an oath upon some other officer.

*Second.* It is urged that the indictment shows the nature of the services claimed to have been rendered by the accused, and that they were of a kind for which, even if in fact rendered, the board of supervisors could make no compensation, and, therefore, that the oath was immaterial.

If it were true that the board of supervisors could not allow the bill, the conclusion that the verification though willfully false would not make the party so verifying guilty of perjury, does not follow. Is it true that if a corruptly false affidavit is presented to a body or a tribunal for action to be taken thereupon, and such body or tribunal refuses to act because it rightfully concludes it is powerless to afford the relief asked, that the party who is willfully false in his evidence cannot be punished? If, upon the trial of an issue before a court, a witness swears falsely with a corrupt intent to a matter material to the issue made by the pleadings, is he to escape justice because the court rightly held that, conceding the truth of the issue as made by the pleading of the party giving the evidence, he has still failed to make out a cause of action or a defense?

The answering of these questions in the affirmative involves a construction of the materiality of evidence, in order to make a party guilty of a crime, which is unwarranted in the law. Whenever a claim is presented to a court or tribunal for adjudication, two questions are at once involved : First, are the facts, on which the claim is based, as claimed by the party? Second, conceding the truth of the allegations, do they entitle him to relief? It would be unsound to say that evidence tending to prove the allegations made would be immaterial, because, conceding their truth, there could be no recovery. If it could be said that the evidence was not material, for the reason just stated, then in any case where evidence is given of a fact which, if true, would tend to establish the issue made by the party, the individual who testified to such isolated fact could escape a conviction of perjury though his evidence was willfully false, because other

The People agt. O Reilly.

evidence in the cause abundantly established the truth of the main issue. Clearly such reasoning would be bad, for the reason that the witness had falsely given material testimony tending to establish a cause of action, even though the main allegation of the complaint was otherwise abundantly established. When a charge of perjury is preferred, and the point is made that the evidence was not material, the test of the materiality is, did it tend to establish the issue upon which it was offered, and not was there sufficient other truthful evidence to justify the result; nor, assuming the truth of the issue to be as claimed by the party in whose behalf it is given, is the party entitled to the relief demanded. An objection may be taken to evidence offered on several different grounds, each one of which may be valid; and in such a case, it would not be accurate to say that one of such grounds was immaterial, because the others were valid and were sustained. It would certainly be true to state that the ruling would have been the same if the objection had not been made, but it would also be accurate to declare that the objection was material, for it was sound in law. Precisely this reasoning is applicable to the point we are considering. There might have been legal objections to the audit and allowance of the prisoner's bill, but as before the bill could even be considered by the board of supervisors, the law required it to be verified, it cannot be said that the oath was immaterial, because the affidavit was, in fact, material for two reasons: First, to give the supervisors jurisdiction to consider the claim; and, second, as furnishing some proof of the truth of the allegations upon which the claim was founded.

As this motion was made during a term of the court, and our attention is completely occupied with pending business, we have had no time to examine authorities. Our views, however, seem to us to be so clear on principle, that we must overrule the motion to arrest judgment.